# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

    Plaintiff,

      v.

DEVIN EUGENE MIMS,

    Defendant.

No. 4:22-CR-00266

(Chief Judge Brann)

## MEMORANDUM OPINION

### NOVEMBER 18, 2025

Defendant Devin Eugene Mims ("Mims") was indicted by grand jury for attempted coercion in violation of 18 U.S.C. § 2242(b) and enticement of a minor and sexual exploitation of minors in violation of 18 U.S.C. § 2252(a)(2).[1] A superseding indictment was later returned adding an additional count of production of child pornography in violation of 18 U.S.C. § 2251 (a) and (e).[2] Currently pending before the Court are Mims' motion to dismiss the indictment and motion to suppress physical evidence.[3] For the reasons that follow, both the motions to dismiss and suppress are denied.

---

[1]    Doc. 3 (Indictment).
[2]    Doc. 43 (Superseding Indictment).
[3]    Doc. 69 (Mot. to Suppress); Doc. 70 (Br. in Supp.).

## I.    BACKGROUND

In late 2021, Mims and another individual were being investigated by state police officials for the trafficking of crack cocaine in Williamsport, Pennsylvania.[4] A confidential informant was involved in the investigation and that informant set up two deliveries of suspected cocaine by an individual later identified as Mims.[5] The latter of the two deliveries occurred on September 7, 2021 and resulted in Mims being observed entering a car with a Pennsylvania registration of "LSH-3573."[6] The next day, September 8th, the same vehicle with the same registration was located outside the residence of 2405 Dove Street.[7] After it was seen there, Detective Robert Anderson ("Det. Anderson") of the Lycoming County Narcotics Unit prepared an arrest warrant ("arrest warrant") for Mims and had it approved by a Pennsylvania Magistrate Judge.[8] The affidavit of probable cause supporting this arrest warrant discusses the two controlled buys conducted through the informant and the notation that Mims was utilizing the car with the registration of "LSH-3573."[9]

After the arrest warrant was approved, the United Marshal Service, who were present alongside Det. Anderson and his state counterparts, knocked on the front

---

[4]    Doc. 83, Ex. 1 at 20.
[5]    *Id.* at 21. The dates of those two controlled buys were August 4, 2021 and September 7, 2021. *Id.* at 20.
[6]    *See id.* at 21.
[7]    *Id.* at 2, 14.
[8]    *See id.* at 2.
[9]    *Id.* at 21.

door of 2405 Dove Street.[10] Latoya Spriddle—who is believed to be Mims' partner—answered the door and indicated that Mims was sleeping upstairs.[11] Mims was "hailed…down the stairs and arrested."[12] Then, "a protective sweep for persons" was conducted at the residence where an officer "observed what appeared to be in excess of $1,000 U.S. currency on top of a chest of drawers in the bedroom MIMS had come from" and "two cellular phones on a nightstand in the [same] bedroom."[13]

The house was then "secured" and Det. Anderson prepared and obtained an approved application for a search warrant for the home ("first search warrant").[14] In support of the search warrant, Det. Anderson stated that Mims had come from a bedroom in the house and a prospective sweep of that same bedroom resulted in an observation of approximately $1,000 and two cell phones.[15] Further, Ms. Spriddle volunteered that one of the phones in the bedroom was Mims'.[16] Finally, Det. Anderson noted that the car in the driveway of the residence had been used 24 hours earlier "to deliver crack cocaine to a confidential informant.[17]

---

[10]  *Id.* at 2.
[11]  *Id.*
[12]  *Id.*
[13]  *Id.*
[14]  *Id.*
[15]  Doc. 83, Ex. 2 at 6. While there was some discrepancy at the hearing on these motions regarding whether anyone saw Mims come from a specific bedroom, it is clear that officers saw Mims come from the upstairs of the home.
[16]  *Id.*
[17]  *Id.*

A search was then conducted on the residence, which yielded some crack cocaine that was "packaged in the same type of bags as the crack cocaine that was delivered to the [informant] during the investigation."[18] Further cocaine material was also located, as well as "two confirmed buy phones located in the bedroom where MIMS was."[19] One of the phones was found underneath a mattress in the bedroom alongside "approximately $3,000 in U.S. currency."[20] The money from the previous two controlled buys was found within this currency.[21] Finally, a third cell phone was found in the home.[22] Charges based on the narcotics activities surrounding these searches are still pending in Pennsylvania state court.[23]

By March 2022, an investigation of Mims was underway based on accusations of sexual abuse by two minors.[24] Both minors alleged that Mims had solicited nude photos from them and that they had sexual intercourse with him.[25] There were also allegations that Mims paid the minors for the sexual encounters, videotaped the encounters, and told each that they belonged to him.[26] Further, investigators were told that when Mims learned of the investigation, he threatened to kill one of the

---

[18]  Doc. 83, Ex. 1 at 3.
[19]  *Id.*
[20]  *Id.*
[21]  *Id.*
[22]  *Id.*
[23]  Doc. 70 at 3.
[24]  *See* Doc. 83 at 3; Doc. 83, Ex. 4 at 2.
[25]  Doc. 83, Ex. 4 at 2.
[26]  *Id.*

victims and told her to deny that anything had happened.[27] At the time, Mims was on probation for the narcotics offenses at issue in 2021.[28]

On March 31, 2022 two Lycoming County probation officers took him into custody for a probation violation at his home, 2405 Dove Street.[29] The officers reported that as he was being detained, "he tossed a black in color smartphone which he was holding in his hand onto the couch inside his residence."[30] The next day, an agent with the Williamsport Bureau of Police submitted an application for a search warrant to seize the smartphone at the 2405 Dove Street residence ("second search warrant").[31] In an affidavit of probable cause for the search warrant, the agent listed all of the above information in this paragraph and indicated that much of it originated from conversations with the two victims.[32] The search warrant was approved and the smartphone seized.[33]

In May 2022, an application for a search warrant was submitted to search the contents of the four smart phones seized in the two previous search warrants ("federal warrant").[34] The search warrant was signed by then-Magistrate Judge William I. Arbuckle on May 5, 2022 and authorized "the forensic examination of

---

[27] *Id.* at 3.
[28] *Id.*
[29] *Id.*
[30] *Id.*
[31] *Id.* at 1.
[32] *See id.* at 2-3.
[33] *Id.* at 4.
[34] *See* Doc. 83, Ex. 5.

the [devises] for the purposes of identifying electronically stored data."[35] An affidavit submitted in support of the application provided a summary of the allegations of sexual assault made against Mims that served as the basis of the state search warrant to obtain the final phone in 2022.[36] The allegations and retelling of conversations with the victims were extensive in the affidavit.[37]

On July 28, 2022, Mims was indicted by a federal grand jury for attempted coercion and enticement of a minor and sexual exploitation of minors.[38]   A superseding indictment was later returned on March 9, 2023, adding an additional count of production of child pornography.[39]

## II.    ANALYSIS

Mims has filed two motions: (A) a motion to suppress all of the physical evidence seized by the police and FBI agents in this case and (B) a motion to dismiss the indictment against him on the grounds of selective enforcement or selective prosecution. The motion to suppress will be addressed in its entirety, and then the Court will turn to the motion to dismiss.

---

[35]  *Id.* at 1, 3.

[36]  *See id.* at 3-7.

[37]  *See id.*

[38]  Doc. 3.

[39]  Doc. 43.

### A.     Motion to Suppress

Mims' motion to suppress raises five issues. He contends that evidence recovered from the two searches that yielded the four relevant phones and the federal search of the material on the phones should be suppressed because: (1) the arrest warrant identified 1025 Washington Boulevard as Mims' residence rendering the entry into the 2405 Dove Street residence to arrest Mims unlawful; (2) the protective sweep of the residence exceeded its permissible scope; (3) the warrant application for 2405 Dove Street did not establish probable cause that evidence would be found at the residence; (4) there was insufficient probable cause to believe that there'd be evidence found within the fourth cell phone desired to be seized in the second search warrant; and (5) there were two mistakes in the federal warrant that undermined probable cause.

### 1.     Arrest at 2405 Dove Street

"[P]olice may enter a suspect's residence to make an arrest armed only with an arrest warrant if they have probable cause to believe that the suspect is in the home."[40] Viewing a car thought to belong to the suspect can support a finding of probable cause to believe that the suspect was home.[41] Evidence obtained after knocking on the door to the alleged residence can also be used to determine if there

---

[40] *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir. 2005) (citing *Payton v. New York*, 445 U.S. 573 (1980)).

[41] *See United States v. Sabur*, No. 04-CR-0264, 2005 WL 2340701, at *3 (E.D. Pa. Sept. 22, 2005).

is probable cause to believe that the suspect is home.[42] However, the Supreme Court of the United States has held that officers may not enter a third party's home to arrest a suspect without first obtaining a search warrant.[43] Therefore, "law enforcement armed with only an arrest warrant may not force entry into a home based on anything less than probable cause to believe an arrestee resides at and is then present within the residence."[44] Further, it important to note that a non-resident suspect lacks a privacy interest to establish the standing required to challenge entry into the third party's home to make an arrest.[45]

Mims first argues that there was no evidence provided to the issuing authority of the arrest warrant that shows Mims was in the residence, other than the fact that the relevant car was found in the driveway.[46] This argument is without merit because it ignores the fact that before officers entered the residence, Ms. Spriddle informed officers that Mims was inside sleeping.[47]

He next argues that the 2405 Dove Street address was not his residence, but solely the residence of Ms. Spriddle.[48] Whether the Dove Street address was Mims' residence is ultimately irrelevant because regardless Mims' Fourth Amendment

---

[42]  *See United States v. Porter*, 281 F. App'x 106, 110 (3d Cir. 2008); *Williams v. City of Philadelphia*, 454 F. App'x 96, 98-99 (3d Cir. 2011).

[43]  *Steagald v. United States*, 451 U.S. 204 (1981).

[44]  *United States v. Vasquez-Algarin*, 821 F.3d 467, 480 (3d Cir. 2016).

[45]  *Agnew*, 407 F.3d at 196 (*Minnesota v. Olson*, 495 U.S. 91, 95-97 (1990)).

[46]  Doc. 70 at 7.

[47]  *See* Doc. 83, Ex. 1 at 2.

[48]  *See* Doc. 70 at 7.

rights were not violated.[49] If the residence was Mims' home—which is likely the case given the convergence of the evidence[50]—then his arrest was lawful.[51] If he did not reside at the residence, then he likely lacked a privacy interest sufficient to have standing to bring this challenge.[52] Even if he was not a resident, but did have a privacy interest, the entry did not violate *his* privacy interests; rather, they would have violated only the interests of Ms. Spriddle.[53] Given that Mims' Fourth Amendment rights were not violated based on the entry of the home to arrest him, the motion to suppress is denied on this ground.

## 2.    The Protective Sweep

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others."[54] The Fourth Amendment to the United States Constitution allows these sweeps when officers possess "a reasonable, articulable suspicion that the house is harboring a person posing a danger to those on the arrest scene."[55] A protective sweep, however,

---

[49]    There would be probable cause to establish that Mims was home given the combination of the facts that the car was in the driveway and that Ms. Spriddle had told officers he was upstairs. Being told by Ms. Spriddle that he was sleeping upstairs also would support a probable cause determination that the residence was Mims'. *See Keating v. Coslett*, No. CIV.A. 11-0411, 2014 WL 1095951, at *7 (M.D. Pa. Mar. 19, 2014).

[50]    That evidence includes the fact that Mims' car was parked in the driveway and the fact that Spriddle informed officers that he was asleep in the residence. Doc. 83, Ex. 1 at 2.

[51]    *Agnew*, 407 F.3d at 196; *Payton*, 445 U.S. at 602-03.

[52]    *Agnew*, 407 F.3d at 196.

[53]    *Id.*

[54]    *Maryland v. Buie*, 494 U.S. 325, 327 (1990).

[55]    *Id.* at 336.

is "not a full search of the premises" and is limited "to a cursory inspection of those spaces where a person may be found."[56] However, sweeps may include "[r]ooms and closets immediately adjacent to the place of arrest."[57] Searches of these immediately adjacent areas can be conducted "without probable cause or reasonable suspicion."[58] Finally, a protective sweep may "last[] no longer than is necessary to dispel the reasonable danger. . . ."[59]

In the instant case, officers conducted the protective sweep of the residence after arresting Mims. Of note, the only room that was apparently searched was the bedroom that officers observed Mims emerging from when they entered the home.[60] All that came from the sweep were observations of a lack of other people in the home and that money and phones were on top of drawers.[61] Following this cursory search, officers waited until they had a search warrant to conduct a more thorough search of the home.[62] This, nearly by definition, was a validly conducted protective sweep. It was only natural for the officers to search the place where Mims emerged from to ensure their safety—especially given the fact the officers were investigating narcotics trafficking involving multiple actors.[63] The officers limited their sweep to

---

[56] *Id.* at 334.
[57] *United States v. Shaulis*, No. 20-2253, 2022 WL 251924, at *1 (3d Cir. Jan. 26, 2022).
[58] *Buie*, 494 U.S. at 334.
[59] *Id.*
[60] *See* Doc. 83, Ex. 1 at 3, 6.
[61] *See id.*
[62] *See id.* at 2.
[63] Mims' contention that there must be specific evidence of other people in the home is without merit. Rather, a sweep of adjacent areas to the arrest—i.e. the upstairs bedroom of a home

a cursory look at that room and did not take more time than was necessary. They then correctly waited for a search warrant to conduct a thorough search. Therefore, Mims' motion to suppress any evidence on this basis is denied.

### 3.    Probable Cause for Residence Search

A search warrant is required to demonstrate probable cause "that contraband or evidence of the crime will be found in a particular place."[64] Because Mims challenges the facial sufficiency of probable cause in the warrant, my job "is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'"[65] In doing so, I must pay deference to the fact that "[i]t is distinctly the magistrate's task to make the 'practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"[66] Thus, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [I] must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'"[67]

---

when the arrest took place at the foot of the stairs—can be conducted "without probable cause or reasonable suspicion." *See Buie*, 494 U.S. at 334.

[64]    *Illinois v. Gates*, 462 U.S. 213, 238 (1983).

[65]    *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Gates*, 462 U.S. at 238).

[66]    *United States v. Williams*, 974 F.3d 320, 350-51 (3d Cir. 2020) (quoting *Gates*, 462 U.S. at 238).

[67]    *Stearn*, 597 F.3d at 554 (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (1993)).

While the Court notes that the affidavit of probable cause attached to the first search warrant could have provided more details regarding the alleged previous narcotics activities of Mims, there are sufficient facts alleged to demonstrate probable cause that evidence of the crime would be found in a particular place. The affidavit provides three allegations that support a finding of probable cause: (1) "[a] protective sweep of the residence was conducted…" which led to an officer observing "$1,000 U.S currency on top of a chest of drawers," (2) the mention of "prerecorded police currency" being potentially in the home, and (3) the "vehicle [in the driveway] was used by MIMS to deliver crack cocaine to a confidential informant within the last 24 hours."[68]  This is further supported by the additional fact that phones were observed in the home, which could contain evidence of narcotics trafficking.[69] The combination of these allegations is sufficient to lead an issuing authority to believe that narcotics, phones used in the sale of narcotics, or the prerecorded police currency would be present in the residence. Therefore, I must uphold the finding of probable cause and deny the motion to suppress made on this basis.

---

[68]    Doc. 83, Ex. 2, at 6-7.

[69]    *Id.*

### 4.    Probable Cause for Second Search Warrant

"To obtain a search warrant, the government must present probable cause that evidence of criminal activity will be found in the place to be searched."[70] The first part of this inquiry requires the affiant to provide sufficient evidence to establish probable cause to believe that a crime has been committed.[71] Again, because Mims challenges the facial sufficiency of probable cause in the warrant, my job "is not to decide probable cause *de novo*, but to determine whether 'the magistrate had a substantial basis for concluding that probable cause existed.'"[72] Thus, "[i]f a substantial basis exists to support the magistrate's probable cause finding, [I] must uphold that finding even if a 'different magistrate judge might have found the affidavit insufficient to support a warrant.'"[73]

Mims' primary argument on this issue is that the conduct alleged in the affidavit supporting the second search warrant occurred "some one or two years" before the warrant was filed.[74] The "[a]ge of the information supporting a warrant

---

[70] *United States v. Alexander*, 54 F.4th 162, 171 (3d Cir. 2022) (citing *Smith v. Ohio*, 494 U.S. 541, 542 (1990)).

[71] *See United States v. Miah*, 444 F. Supp. 996, 999-1000 (E.D. Pa. 1977) (citing *Spinelli v. United States*, 393 U.S. 410, 419 (1969)); *United States v. Dixon*, 787 F.3d 55, 59 (1st Cir. 2015) (referring to this as the "commission element").

[72] *United States v. Stearn*, 597 F.3d 540, 554 (3d Cir. 2010) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

[73] *Id.* at 554 (quoting *United States v. Conley*, 4 F.3d 1200, 1205 (1993)).

[74] Doc. 70 at 18. Mims provides a secondary argument that the warrant mistakenly says that the alleged criminal conduct took place at the 2405 Dove Street Address. *Id.* at 17. This fact is irrelevant to my analysis because it matters not that the criminal acts may have occurred elsewhere, but it matters greatly that there is sufficient evidence to find that a phone containing evidence of that criminal conduct is at the 2405 Dove Street residence.

application is a factor in determining probable cause."[75] "If too old, the information is stale and probable cause may no longer exist."[76] Staleness is evaluated not solely based on the time "between the facts relied on and the issuance of the warrant," but also "the nature of the crime and the type of evidence."[77]

The evidence in the affidavit supporting the second search warrant is not stale. With respect to child pornography offenses "accomplished through the use of a computer," the Third Circuit has advised that relevant "information . . . has a relatively long shelf life. It has not been, and should not be, quickly deemed stale."[78] This guidance is synthesized from two factors: (1) "persons with an interest in child pornography tend to hoard their materials and retain them for a long time"[79]; and (2) "computers have 'long memor[ies]' . . . [i]mages stored on computers can be retained almost indefinitely, and forensic examiners can often uncover evidence of possession or attempted possession long after the crime has been completed."[80]

---

[75] *United States v. Harvey*, 2 F.3d 1318, 1322 (3d Cir. 1993) (citing *United States v. Forsythe*, 560 F.2d 1127, 1132 & n.6 (3d Cir. 1977)).

[76] *Harvey*, 2 F.3d at 1322 (citing *United States v. McNeese*, 901 F.2d 585, 596 (7th Cir. 1990)).

[77] *Id.* (quoting *United States v. Williams*, 897 F.2d 1034, 1039 (10th Cir. 1990) and citing *United States v. Tehfe*, 722 F.2d 1114, 1119 (3d Cir. 1983)).

[78] *United States v. Vosburgh*, 602 F.3d 512, 529 (3d Cir. 2010) (citing *United States v. Shields*, 458 F.3d 269, 279 n.7 (3d Cir. 2006)). The Court sees no reason to distinguish from the use of a computer in *Vosburgh* and the use of a phone in the instant case.

[79] *Id.* at 528 (citing *Shields*, 458 F.3d at 279 n.7)

[80] *Id.* at 529 (quoting *United States v. Gourde*, 440 F.3d 1065, 1071 (9th Cir. 2006) (en banc)); *United States v. Caesar*, 2 F.4th 160, 175-76 (3d Cir. 2021); *see United States v. Kvashuk*, 29 F.4th 1077, 1087 (9th Cir. 2022) (denying staleness challenge to 15-20-month-old evidence stored on computer); *United States v. Seiver*, 692 F.3d 774, 775-78 (7th Cir. 2012) (Posner, J.) (arguing that staleness of digital evidence should be grounded solely in computer data retention considerations, rather than tendencies of specific defendants).

Moreover, because the Court must consider "the nature of the crime,"[81] "where the facts adduced to support probable cause describe a course or pattern of ongoing and continuous criminality, the passage of time between occurrence of the facts set forth in the affidavit and the submission of the affidavit itself loses significance."[82]

Here, it is first important to note that the majority of the evidence in the affidavit came from the March 2022 interviews with the victims.[83] The second search warrant was just issued days after these interviews.[84] This evidence was clearly not stale. Additionally, the phone sought to be seized by this warrant was seen to be thrown on the couch while Mims was being detained *a day prior to the warrant's issuance*.[85] Again, this evidence in the affidavit is clearly not stale. However, the information to be sought on the phones is a different question. While the information in the phones was alleged to have occurred in the year or two prior to the issuance of the second warrant, the allegations made in the affidavit suggest a continuous course of criminal conduct achieved in large part through the use of his phones.[86]

---

[81]   *Harvey*, 2 F.3d at 1322.

[82]   *United States v. Costa*, 736 F. Supp. 2d 859, 863 (D. Del. 2010) (quoting *United States v. Urban*, 404 F.3d 754, 774 (3d Cir. 2005)); *United States v. Ninety-Two Thousand Four Hundred Twenty-Two Dollars and Fifty-Seven Cents ($92,422.57)*, 307 F.3d 137, 148 (3d Cir. 2002).

[83]   *See* Doc. 83, Ex. 4 at 2. While the dates of the interviews with Victim #1 are the only dates provided, it seems to be a safe assumption that an interview with Victim #2 was conducted in or around that time.

[84]   *Id.* at 1.

[85]   *Id.* at 3.

[86]   Mims seems to ignore the fact that the superseding indictment in this case includes attempted coercion and enticement charges. *See* Doc. 43. This means that evidence beyond sexually explicit material, relevant to the third count of production of child pornography, could have

Additionally, none of the material sought from the phones would have been greater than two years old at the time of the warrant.[87] Frankly, the Court does not see that evidence as sufficiently stale to undermine a finding of probable cause.

Moving past the spoilation argument, the entire affidavit includes facts sufficient to find probable cause. But to summarize, the affidavit alleges Mims' had a long string of criminal sexual conduct with minors, he videotaped some of their sexual encounters, he solicited and received nude materials from those minors, and he had tossed a phone into the residence prior to being taken into custody.[88] While Mims seems to argue that there needs to be some piece of "smoking gun" evidence showing exactly what would be found on the phone,[89] that is not needed. Rather, what is required is a determination that there is probable cause that evidence of criminal activity would be found in the place to be searched.[90] That is just what the combined allegations listed in the affidavit make out. Therefore, there was a sufficient basis in the evidence presented in the affidavit for the magistrate to conclude that there was probable cause that evidence of criminal activity would be

---

been sought from the phone. Both that and communication with minors regarding sexual activities could have been present on the phone.

[87] Further, Mims ignores the fact that a victim alleged that Mims was recently in contact with her prior to the issuance of the warrant. *See* Doc. 83, Ex. 4 at 3. This allegation, which was present in the affidavit attached to the warrant, makes it more likely that communications with a minor would be present on the phone. This strongly supports the finding of probable cause to issue the warrant.

[88] Doc. 83, Ex. 4 at 2-3.

[89] Doc. 70 at 17.

[90] *United States v. Alexander*, 54 F.4th 162, 171 (3d Cir. 2022) (citing *Smith v. Ohio*, 494 U.S. 541, 542 (1990)).

found in the place to be searched and the motion to suppress on this basis is denied here as well.

### 5.    The Potential *Franks* Issue

The final issue that Mims raises in regard to his motion to suppress is a constitutional *Franks* issue.[91] To advance this argument, he sets forth two mistakes made in the second search warrant and the federal warrant: (1) saying that the first search warrant conducted on the home where Mims was arrested took place at 2405 Dove Street—not at 1025 Washington Boulevard as listed in the Affidavit of Probable Cause,[92] and (2) "the alleged sexual acts did not occur at the same location where the search warrant was executed on the September 8, 2021 narcotics search."[93] Neither of these errors is sufficient to entitle Mims to a *Franks* hearing, and they certainly do not warrant suppression.

In the case of *Franks v. Delaware*, the Supreme Court of the United States held that when "a defendant showed by the preponderance of the evidence that a false statement necessary to the finding of probable cause was made 'knowingly and intentionally, or with reckless disregard for the truth,' the constitution requires that any evidence derived from the exercise of that warrant had be excluded from a

---

[91]  Doc. 70 at 19.
[92]  *See* Doc. 83, Ex. 5 at 6. Mims also claims that the three phones were seized at 2405 Dove Street, not at 1025 Washington Boulevard as listed in the Affidavit of Probable Cause. Doc. 70 at 19.
[93]  *See* Doc. 83, Ex. 5 at 6; Doc. 70 at 19.

criminal trial."[94] "To obtain a *Franks* hearing, a defendant must establish (1) that a warrant application contained false statements made with reckless disregard for the[ir] truth and (2) that the remaining truthful statements, standing alone, do not establish probable cause."[95] Important to this case, "assertions are made with reckless disregard for the truth when an officer has obvious reasons to doubt the truth of what he or she is asserting."[96]

Mims has failed to establish either prong of the standard to obtain a *Franks* hearing. While it is undisputed that the second search warrant and the federal warrant contained mistakes[97]—notably the location of the search that produced the three phones—there is no reason, let alone an obvious reason, to doubt the truth of what the officers asserted in the affidavits. Rather, as the government points out, there were two warrants executed at two separate locations on the date listed.[98] The address listed in the affidavit for the federal warrant was the address of the other search warrant.[99] This appears to be the case of an inconsequential and unintended mistake, not an intentional attempt to divert the court. This finding is strengthened

---

[94] *Wilson v. Russo*, 212 F.3d 781, 787 (3d Cir. 2000).

[95] *United States v. Desu*, 23 F.4th 224, 234 (3d Cir. 2022) (citing *Franks v. Delaware*, 438 U.S. 154, 171-72 (1978)).

[96] *Id.* (quoting *Wilson*, 212 F.3d at 783).

[97] As FBI Special Agent Ambers P. Wilson testified to at the hearing regarding the present motions, the affidavit he prepared for the federal warrant was based off of the allegations made in the affidavit attached to the second search warrant prepared by Agent Brittany Alexander of the Williamsport Bureau of Police. This explains why the same errors appear on both warrants.

[98] *See* Doc. 83, Ex. 1 at 3-4.

[99] *See id.*

by the fact that Mims provides no evidence to support a contrary finding that there was an obvious reason to doubt the veracity of the officers assertions. This means that Mims has failed to establish the first prong of the standard to warrant a *Franks* hearing.

Additionally, the error made in the warrants would not change the determination that there was probable cause to grant the warrant. To determine if the mistaken assertion was inconsequential, "we excise the offending inaccuracies and insert the facts recklessly omitted, and then determine whether or not the corrected warrant affidavit would establish probable cause."[100] Here, replacing the incorrect address of the previous warrant, or even excluding the reference to where the assaults occurred, would not affect the fact that probable cause is apparent from the face of the affidavit.[101] The statement in the affidavit at issue does not assist the court in determining whether probable cause exists; that determination is based on the surrounding information that alleges past conduct of Mims. Rather, it simply provides information on how three of the four phones at issue in the warrant were obtained. Because the mistaken material does not affect the probable cause determination, Mims has also failed to establish the second element required to hold a *Franks* hearing.

---

[100] *Wilson*, 212 F.3d at 789 (internal quotation marks omitted).
[101] Notably absent from Mims' briefing on the *Franks* issue is any assertion that the mistakes would have affected the probable cause determination. *See* Doc. 70 at 21.

Given that neither prong of the standard governing when to have a *Franks* hearing has been met, the Court will not grant Mims such a hearing.

### 6.    Motion to Suppress Disposition

Because the Court has found that there has been no valid justification proffered to suppress any evidence in this case, Mims' motion to suppress is denied.

### B.    Motion to Dismiss the Indictment

Mims' Motion to Dismiss the Indictment is premised on three major arguments: (1) selective prosecution, (2) selective enforcement, and (3) the Department of Justice's Petite Policy interaction with the current state proceedings regarding similar conduct of Mims.

### 1.    The Petite Policy

Mims' first contention is that it is abnormal and inherently unfair for him to be prosecuted in federal court based on conduct that is the subject of state court proceedings. While Mims does not explicitly raise this argument as a basis to dismiss the indictment, it seems to underride his entire motion to dismiss, and, as such, the Court believes it prudent to address the contention head on.

Mims raises the issue of what has been known as the "Petite Policy" in this case.[102] While he provides no guide as to what this policy is to be used for, it seems like it could be of aid in determining whether a selective prosecution is hiding in the

---

[102] *See* Doc. 68 at 5. For the entire text of the "Petite Policy" *see* U.S. Dep't of Just., Just. Manual § 9-2.031 (2018).

shadows of this case. Under the Petite Policy, "United States Attorneys are forbidden to prosecute any person for allegedly criminal behavior if the alleged criminality was an ingredient of a previous state prosecution against that person."[103]

The Court does not doubt the benefits of the Justice Department having such a policy on the books.[104] However, as the Supreme Court of the United States has noted, the Petite Policy is not "constitutionally mandated."[105] Further, the Supreme Court has repeatedly held that "the Constitution does not deny the State and Federal Governments the power to prosecute for the same act."[106] Therefore, it is well settled law at this point that the United States Constitution does not stand in the way of United States Attorneys and Pennsylvania prosecutors prosecuting Mims for similar or identical conduct. Additionally, Mims provides no case law to support an assertion that a failure to abide by the Petite Policy can be utilized as evidence of a selective prosecution. Upon a thorough review of the relevant case law, the Court can find no case to support such a proposition and declines to be the first court in this nation's history to do so.[107]

---

[103] *Thompson v. United States*, 444 U.S. 248, 248 (1980) (per curiam).

[104] *See Rinaldi v. United States*, 434 U.S. 22, 28-29 (1977) (discussing the "the fairness implications of the multiple prosecution power").

[105] *Id.* at 29.

[106] *See, e.g.*, *id.* at 28; *Bartkus v. People of State of Ill.*, 359 U.S. 121, 131-32 (1959); *Abbate v. United States*, 359 U.S. 187, 193-94 (1959).

[107] Especially in a case where it is arguable whether the policy has even been violated. *See* Doc. 76 (Br. in Opp'n) at 10-11.

## 2.    Selective Prosecution and Selective Enforcement

The Equal Protection Clause of the United States Constitution protects against both selective prosecution and selective enforcement.[108] Selective prosecution claims are focused on the actions of prosecutors, while selective enforcement claims concern "the actions of law enforcement and those affiliated with law-enforcement personnel."[109] Substantive claims under either are "generally evaluated under the same two-part test."[110]

> A defendant challenging a criminal prosecution at either the law enforcement or prosecution inflection points must provide "clear evidence" of discriminatory effect and discriminatory intent…. Meeting this standard generally requires evidence that similarly situated individuals of a difference race or classification were not prosecuted, arrested, or otherwise investigated.[111]

In this context, discriminatory effect means that "the claimant must show that similarly situated individuals of a different race [or classifications] were not prosecuted."[112] Meanwhile, discriminatory intent means "that the decisionmaker ... selected or reaffirmed a particular course of action at least in part because of, not merely 'in spite of,' its adverse effects upon an identifiable group."[113]

---

[108]  *See Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Washington*, 869 F.3d 193, 214 (3d Cir. 2017)

[109]  *Washington*, 869 F.3d at 214.

[110]  *Id.*

[111]  *Id.*

[112]  *United States v. Armstrong*, 517 U.S. 456, 457 (1996).

[113]  *Wayte v. United States*, 470 U.S. 598, 610 (1985).

Despite being the very beginning of the analysis, this is where Mims' claims fall apart. To seemingly show discriminatory effect or intent, Mims gestures towards the Petite Policy and a single case that Defense Counsel has experienced where a defendant's state charges were dismissed in lieu of federal charges.[114] The Petite Policy was determined above to have no effect on a selective enforcement or prosecution analysis. Additionally, the one cited case of an allegedly similarly situated person is entirely distinguishable.[115] Therefore, the Court does not view either the proffered case or the Petite Policy as clear evidence of either discriminatory effect or intent.

Mims provides no additional evidence to support his selective prosecution or enforcement claims. What remains of the sections of his brief on these claims can at best be described by the court as swagger lacking any support. Mims claims that "[u]pon information and belief, Caucasian men in this district, who have engaged in similar conduct, are regularly charged and/or prosecuted in one forum – state or federal court – but not both."[116] This is a very serious allegation, but one that he fails to support with any evidence at all. Next, Mims claims that "other classifications

---

[114] *See* Doc. 68 (Br. in Supp.) at 4-6.

[115] The Government points out several ways that the case is different than that of the instant case, including the fact that in *Mansberger* no minor was involved (instead it was an undercover FBI agent), the criminal histories of the defendants differ, and the fact that the charges differed. *See* Doc. 76 at 7-8. While the Court acknowledges that a similarly situated case does not have to be factually identical, the differences between these cases are substantial enough to render *Mansberger* an unsuitable comparator in this case.

[116] Doc. 68 at 6.

[motivating a selective prosecution or enforcement] may exist based upon the lurid nature of the allegations, or on a complete lack of respect for the state courts."[117] Again, this is a serious accusation made with no support provided to back it up. What Mims has proffered does not amount to "clear evidence" of the discriminatory effect and intent required to support a dismissal based on selective prosecution or selective enforcement. As the Government points out, the law requires more.

### 3. Discovery for a Selective Prosecution or Enforcement Claims

In the event that the Court determined that Mims had failed to meet his burden to show a selective prosecution or enforcement, he argued in the alternative that discovery on the claims should be granted. That request for discovery fails for the same reasons that the selective prosecution and enforcement claims failed—there is an utter lack of evidence to support it.

For a district court to grant discovery on a selective prosecution claim, the clear evidence standard described above does not apply.[118] Rather, there must be "some evidence" presented of discriminatory effect and discriminatory intent, which "must still include a showing that similarly situated persons were not prosecuted."[119] However, the Third Circuit has stated that there is a distinct standard for determining

---

[117] *Id.*

[118] *Washington*, 869 F.3d at 221

[119] *Id.* at 214-15. Importantly, this standard is easier to pass because a criminal defendant "will not often have access to the information, statistical or otherwise, that might satisfy a 'clear evidence' burden." *Id.* at 214.

whether discovery should be granted on a selective enforcement claim.[120] In these cases, "a district court retains the discretion to conduct a limited pretrial inquiry into the challenged law-enforcement practice on a proffer that shows 'some evidence' of discriminatory effect. The proffer must contain reliable statistical evidence, or its equivalent, and may be based in part on patterns of prosecutorial decisions."[121] Importantly,

> defendant need not, at the initial stage, provide "some evidence" of discriminatory intent, or show that (on the effect prong) similarly situated persons of a different race or equal protection classification were not arrested or investigated by law enforcement. However, the proffer must be strong enough to support a reasonable inference of discriminatory intent and non-enforcement.[122]

To determine if discovery is appropriate, district courts can look to specific circumstances of the case before it including "the strength of a defendant's discovery proffer, the similarity to previous cases raising similar concerns, [and] the need to avoid overly prejudicial or irrelevant disclosure."[123] Additionally, as the Supreme Court of the United States has explicitly said, this "showing necessary to obtain discovery should itself be a significant barrier to the litigation of insubstantial claims."[124] Further, a district court should remain "mindful that the end 'goal' of

---

[120] *Id.* at 220.
[121] *Id.* at 220-21.
[122] *Id.* at 221.
[123] *Id.* at 220.
[124] *United States v. Armstrong*, 517 U.S. 456, 464 (1996).

such a discovery motion is a valid claim of selective enforcement under the heightened substantive standards."[125]

First, there has been no proffer of even "some evidence" to support discovery on the selective prosecution claim. Fatal for Mims's claim here is that the some evidence standard still requires a showing that similarly situated persons were not prosecuted. Mims has proffered no such evidence in this case, outside of a single distinguishable case. That is insufficient to meet the standard. Further, no actual evidence has been submitted to show discriminatory intent. Either of these flaws in Mims' discovery proffer are fatal to his request for discovery for his selective prosecution claim.

Second, there has not been a sufficient discovery proffer to allow discovery on the selective enforcement claim. Most importantly, here, the Court cannot determine on the basis of Mims' argument or proffered facts in support of this motion to dismiss that there is "a reasonable inference of discriminatory intent and non-enforcement."[126] Additionally, while the standard to merit discovery on the basis of selective enforcement is lesser than for selective prosecution, there still must be some evidence proffered of discriminatory effect. There has been absolutely no evidence set forth by Mims. His unsupported statements alleging selective enforcement based on several circumstances and provision of a single

---

[125] *Washington*, 869 F.3d at 214.
[126] *Washington*, 869 F.3d at 221.

distinguishable case are simply insufficient to meet this lesser standard and warrant discovery in this case. The Court does not believe it prudent to allow discovery based on such a thin discovery proffer.

### 4.    Motion to Dismiss Disposition

Applying any of the above referenced standards, leads the Court to the conclusion that Mims has failed to provide sufficient evidence to allow for discovery or merit a dismissal of the indictment.[127] As such, Mims' motion to dismiss the indictment is dismissed and discovery will not be granted on the issue.

### III.    CONCLUSION

For the foregoing reasons, Mims' Motion to Dismiss and his Motion to Suppress are denied.

An appropriate Order follows.


BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[127] This is to say that even if I applied even the minimal "some evidence" standard to determine if discovery or dismissal was warranted based on a claim of either selective enforcement or prosecution, I would conclude that Mims has failed to meet their burden. Such a conclusion is inevitable in this case due to the utter lack of proffered evidence by Mims in his motion to dismiss and supporting briefing.