**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>v.<br>DEVIN EUGENE MIMS,<br>Defendant. | No. 4:22-CR-00266<br>(Chief Judge Brann) |

**MEMORANDUM OPINION**

**OCTOBER 5, 2026**

## I. BACKGROUND

Defendant Devin Eugene Mims ("Mims") was indicted by grand jury for "attempted coercion and enticement of a minor" in violation of "18 U.S.C. § 2242(b)" and "sexual exploitation of minors" in violation of 18 U.S.C. § 2252(a)(2).[1] A superseding indictment was later returned with an additional count of production of child pornography in violation of 18 U.S.C. § 2251 (a) and (e).[2] Currently pending

---

1 Doc. 3 (Indictment).

2 Doc. 43 (Superseding Indictment). The Court notes that the superseding indictment contains some errors regarding titles of statutes and the statutes themselves. First, the second count of the indictment is "[i]n violation of Title 18, United States Code, Sections 2242(b)." *See id.* at 2. However, there is no subsection "b" of section 2242. *See* 18 U.S.C. § 2242. Instead, it seems that the indictment intended to reference 18 U.S.C. § 2422(b). Additionally, Count 3 of the indictment lists the title of charge as "sexual exploitation of minors" under 18 U.S.C. § 2252(a)(2). *See* Doc. 43, at 3. But the title of "Sexual exploitation of children" is the title of 18 U.S.C. § 2251, which is the statute listed in Count 1 of the indictment. Nevertheless, these clerical errors do not require dismissal and can be cured. *See United States v. Miller*, 471 U.S. 130, 139–40 (1985); *United States v. Syed*, No. 2:22-CR-00818, 2025 WL 635300, at *8 (D.N.J. Feb. 27, 2025); *see also United States v. Garner*, 529 F.2d 962, 966 (6th Cir. 1976) ("The fact that an indictment contains a miscitation of a statute is not grounds for dismissing the indictment unless the defendant is misled thereby").

before the Court are four motions in limine—three filed by Mims and one submitted by the Government.[3] Each has been fully briefed and is now ripe for disposition. The Court will begin by discussing the Government's Motion, before addressing the remaining three motions.

## II. MOTION TO ADMIT OF EVIDENCE REGARDING MV2

The Government's only motion in limine seeks to admit testimony of an alleged victim who is not named in the superseding indictment.[4] As previously referenced, that indictment charges Mims with three offenses: (1) production of child pornography in violation of 18 U.S.C. § 2251(a) and (e), (2) coercion and enticement

---

Rule 7(c)(2) of the Federal Rules of Criminal Procedure states that "[u]nless the defendant was misled and thereby prejudiced, … an error in a citation … is [not] ground to dismiss the indictment." As the Defendant has not raised these issues and the parties appear to be aware of what the charges of the indictment should be, it is apparent that there has been no misleading of or prejudice to the Defendant. Nevertheless, prior to trial, it would be prudent for the Government to amend the indictment to fix all clerical errors. *See Russell v. United States,* 369 U.S. 749,770 (1962) ("an indictment may not be amended except by resubmission to the grand jury, *unless the change is merely a matter of form*") (emphasis added); *see also United States v. Fawcett*, 115 F.2d 764, 766-67 (3d Cir. 1940) ("the change herein made was only one of form and comes within the meaning of the statutes herein referred to. It was properly allowed."); *United States v. Evans*, No. 3:CR-19-09, 2021 WL 5279896, at *2 (M.D. Pa. Nov. 12, 2021); *United States v. Alcorta*, 145 F. Supp. 3d 357, 361 (M.D. Pa. 2015) ("A district court may amend an indictment without consulting the grand jury when the change is merely a matter of form") (internal quotation marks omitted); *United States v. Long-Parham*, 183 F. Supp. 3d 746, 747 n.1 (W.D. Pa. 2016).

Therefore, the Government will be ordered to file a motion to amend the indictment to fix all typographical and clerical errors within seven days of the filing of this memorandum opinion. The Defendant will then have seven days to object to the amendment. If he does object, he should be prepared to explain in concrete terms how he has been prejudiced.

3 Doc. 111; Doc. 112; Doc. 114.

4 While there are no alleged victims identified in the superseding indictment, both the Government and the Defendant agree that there is one alleged victim for the purposes of that indictment. That sole alleged victim is a separate person from whom the Government seeks to elicit this testimony.

in violation of 18 U.S.C. § 2422(b), and (3) receipt of child pornography in violation of 18 U.S.C. § 2252(a)(2).[5] All of these offenses are related to a sole alleged minor victim, who will be called "MV1" in this opinion.[6]

The Government alleges that it intends to present evidence at trial of text and video messages between MV1 and Mims from July 1, 2021.[7] During that conversation, which is attached to the sealed motion as a sealed exhibit, Mims is alleged to have sent a message naming an additional minor ("MV2"), "referenc[ing] a time where [Mims] observed MV1 engage in oral sex with MV2."[8] As a result, the Government seeks to call MV2 to testify at this trial for the following reasons: (1) "to identify herself," (2) to say "that Mims invited MV2 to engage in a threesome with himself and MV1," and (3) to state that "during the consummation of that threesome, MV1 performed oral sex on MV2."[9]

The Government argues this testimony is admissible because it is intrinsic evidence and is an exception to the general prohibition against character evidence contained in Federal Rule of Evidence 404.[10] It has brought this motion to admit this evidence in advance of trial.[11] Meanwhile, Mims responds that it is not intrinsic

5 Doc. 43.
6 Doc. 119, at 2.
7 *Id.* at 3.
8 *Id.*
9 *Id.* at 3-4 (cleaned up).
10 *Id.* at 4.
11 As a procedural matter, the Court notes that the only difference between the Government's Motion and Brief in Support is the title. They are otherwise identical. *Compare* Doc. 111, *with*

evidence and that there is no proper purpose to allow for a Rule 404(b) character evidence exception.

Before addressing the substance of this motion, it is necessary to discuss a key misconception that underpins the Defendant's brief in opposition. As has been previously described, the Government intends to offer the testimony of MV2 solely related to the joint sexual activities of MV1, MV2, and Mims. The Defendant appears to have misunderstood the purpose of the proposed testimony and argues that it is related to uncharged conduct between solely MV2 and Mims.[12] It is not. At no point does the Government argue that such conduct would be testified to by MV2.[13] Further, if this were the intention of the Government, and if any such testimony about third party conduct with the Defendant is sought at trial, the Court would immediately rule it inadmissible for a number of reasons, including, most notably, that it is entirely irrelevant.

Instead, the Government solely seeks permission to have MV2 testify to her involvement in a sexual encounter with both MV1 and Mims. That is the only testimony that the Court will analyze for admissibility at this time.

Despite both parties focusing on arguments surrounding character evidence and intrinsic evidence, it is not necessary to delve into either of these doctrines. The

Doc. 119. Despite this procedural irregularity, the Court will treat the original filing as a motion, given that the parties clearly understood it to be one.

12 *See generally* Doc. 120.

13 *See* Docs. 111, 119.

reason for this is simple; the testimony by MV2 on this topic does not appear to be substantially relevant to the charges in the indictment, and more importantly, it would violate Rule 403 of the Federal Rules of Evidence.

Under the Federal Rules of Evidence, "the bar for what constitutes relevant evidence is low."[14] To be admissible, evidence must be relevant under Rule 401 and pass a Rule 403 balancing test. Rule 401 establishes that the test for whether a piece of evidence is relevant "is whether the evidence has '*any tendency* to make a fact more or less probable than it would be without the evidence,' where 'the fact is of consequence in determining the action.'"[15] Federal Rule of Evidence 403 provides the second generic hurdle to admissibility. Under Rule 403, "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."

Mims was indicted on three counts, two of which are child pornography charges: the production and receipt of child pornography. Both of these offenses require the production or receipt of a "visual depiction."[16] As an initial matter, there are no allegations anywhere in the record that the particular sexual event that the Government seeks to have MV2 testify about was recorded, so it cannot be the visual

---

14 *Forrest v. Parry*, 930 F.3d 93, 114 (3d Cir. 2019); *see also Failla v. City of Passaic*, 146 F.3d 149, 159 (3d Cir. 1998) ("The test of relevance under the Federal Rules of Evidence is low.").

15 *Forrest*, 930 F.3d at 114 (quoting Fed. R. Evid. 401 (emphasis added)).

16 *See* 18 U.S.C. § 2251(a); 18 U.S.C. § 2252(a)(2).

depiction at the heart of either of those charges—and cannot be relevant at all to the receipt charge.[17] Instead, the Government argues that the testimony is relevant to "Mims'[] efforts at coercing MV1" to produce the child pornography or to engage in an illegal sexual act as required by the final charge—coercion and enticement in violation of 18 U.S.C. § 2242(b).[18]

But the Court does not see how the actual message referenced by the Government,[19] bears any relevance to the coercion or enticement of MV1 to produce child pornography or engage in an unlawful sexual activity. This reference to MV2 appears in a single message in a text chain that spans more than fifty messages. Additionally, it was neither acknowledged by MV1 nor further discussed by Mims. Even if the context of the message is read to establish that this sexual encounter between the three individuals did occur,[20] the Court cannot say that this would make any determinative fact more or less probable. That is to say, it does not appear to have played any role in the coercion or enticement of MV1. There are certainly

---

[17] The Court notes that the Government states that Mims participated in sexual encounters that were filmed from February to April 2021. *See* Doc. 119, at 7-8. But there is no specific reference in the Government's briefing or anywhere else in the record as to whether this sexual encounter between these three individuals was filmed.

[18] *See* Doc. 119, at 6-9. There are also references to it being probative of Mims' "motive, opportunity, and intent to have MV1 engage in oral sex." But it is entirely unclear how this is at all relevant to the charged offenses in this case. This case is about production of child pornography, receipt of child pornography, and the *coercion* of a minor in engaging in an illicit sexual activity. If this were a state law rape case, the Government would have made a compelling argument for the probative effect of this testimony, but it is not. The relevance of this evidence to these specific charges has not been made clear by the Government.

[19] This message does directly reference the name of MV2.

[20] The Court is not saying that this message establishes this, but is simply making this statement to show its logic.

statements before and after the referenced message that could be read to demonstrate such coercion, but to read this message as making enticement more probable strains credibility.[21]

The Government also proffers identity as a potentially relevant purpose for this testimony.[22] Unless a defendant chooses to admit identity, identification is at issue in every criminal case.[23] This testimony by MV2 would make the identity of Mims as the sender of these messages more probable, and therefore it could be relevant under Rule 401 for this purpose. However, the Court considers the testimony sought marginally relevant to identity, at best. It appears likely that there will be at least two additional sources of identification evidence proffered at trial that will be far stronger than MV2's potential testimony. First, it is clear that an FBI agent will be testifying to an extraction of a cell phone that is tied to Mims and from which these messages were taken.[24] Additionally, it appears likely that MV1, herself, will take the stand, and will be asked about who she believes she was sending these messages and videos to.[25] As the Court conducts its Rule 403 analysis, this makes clear that there is not an "actual need" for this testimony.[26]

---

[21] However, the Court notes that there would be nothing preventing MV1 from testifying about the message and what she took it to mean. The Defendant would assuredly have the chance to object to such testimony, but that would present a separate question that the one currently before the Court.

[22] *See* Doc. 111, at 6.

[23] *United States v. Wilford,* 493 F.2d 730, 734 n. 9 (3d Cir.1974).

[24] *See* Doc. 111, at 3.

[25] *See id.*

[26] *United States v. Cook*, 538 F.2d 1000, 1003 (3d Cir. 1976).

Despite this relevance, given that it cannot be disputed that the testimony of MV2 would be extremely prejudicial to MV2, Rule 403 prohibits the admission of this evidence.[27] "The ... prejudice against which the law guards [is] ... *unfair* prejudice—... prejudice of the sort which cloud[s] impartial scrutiny and reasoned evaluation of the facts, which inhibit[s] neutral application of principles of law to the facts as found.... Prejudice does not simply mean damage to the opponent's cause. If it did, most relevant evidence would be deemed prejudicial."[28] Here, if this testimony were allowed, impartial scrutiny related to the salacious and illegal sexual conduct that MV2 would describe would likely arise en mass. Some of that impartial scrutiny is a necessity in a criminal trial whose subject matter is child sexual assault, but, as previously stated, this testimony is not actually needed by the Government to make its case. Because of this and the fact that MV2's testimony would also directly invite the jury to follow a propensity line of thought, this would be a form of unfair prejudice.[29] While the Government argues that this testimony will "help direct the

---

27 The Court notes that "pretrial Rule 403 exclusions should rarely be granted." *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990). However, given the presence of the previous testimony of MV2 in the record and the Government's statement that she would likely testify consistent to that testimony, *see* Doc. 111, at 4, this is a scenario where the "record [is] complete enough on the point at issue to be considered a virtual surrogate for a trial record." *Id.*

28 *Ansell v. Green Acres Contr. Co.,* 347 F.3d 515, 525 (3d Cir.2003) (emphasis in original).

29 The Court recognizes that this testimony may satisfy one of the Rule 404(b)(2) permitted uses for character evidence, namely identity. However, "[e]vidence falling within Rule 404(b) must be carefully analyzed under Rule 403." *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 n.5 (3d Cir. 1990).

factfinder to the central question of this case,"[30] it will likely do just the opposite. It could, and likely would, "lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged."[31]

The Court finds that such prejudice substantially outweighs whatever modest probative value the testimony would provide. Therefore, under Rule 403, the testimony of MV2 sought to be proffered by the Government at trial is inadmissible.[32] As a result, the Government's motion to admit evidence is denied.

## III. USE OF THE PHRASE "CHILD SEXUAL ABUSE MATERIAL" OR ITS ABBREVIATION "CSAM"

Mims' first motion in limine seeks the preclusion of "the term 'child sexual abuse material' or its abbreviation 'CSAM'" at the upcoming trial.[33] He makes several arguments in support of a prohibition, including saying that neither the term, nor its abbreviation, is "a legal term of art[,] is not adequately or consistently defined

---

30 *See* Doc. 119, at 13.

31 *Old Chief v. United States*, 519 U.S. 172, 180 (1997). As the Supreme Court of the United States has said, this can occur when a defendant' previous bad act is generalized "into bad character and taking that as raising the odds that he did the later bad act now charged (or, worse, as calling for preventive conviction even if he should happen to be innocent momentarily)." *Id.* at 180-81. That is exactly what would likely occur if the previous "bad act" were allowed to be testified to by MV2.

32 This evidence is not deemed inadmissible purely because it would appear to be "devastating." *See United States v. Heatherly*, 985 F.3d 254, 266 (3d Cir. 2021). The description of the sexual encounter that MV2 would likely provide would appear to be unsettling, but it is a description of acts that even if proven would not render the Defendant guilty of any of the offenses charged *in this federal indictment*. The difference between this testimony and the material at issue in the *Heatherly* case that the Government heavily relies upon is the probative nature of the evidence. There, it was highly probative. *Id.* Here, it is marginally relevant of identity, alone, and not to the substantive elements of any of the charges. Additionally, there are other ways to establish identity available to the Government.

33 Doc. 112, at 1.

in caselaw[,] and is not [a] statutorily defined phrase in the United States Code."[34] He also argues that the terms assume the existence of sexual abuse and could be confused with the term child pornography.[35] These points lead him to his larger conclusion that the term and its acronym would violate the Due Process Clause of the Fifth Amendment of the United States Constitution, and Federal Rule of Evidence 403 because they "undermine[] the presumption of innocence, risk[] unfair prejudice" and confusion of the issues, and comment on the ultimate issue.[36]

The Government argues that these phrases are natural terms relied upon by the law enforcement community and any preclusion of them "will hamstring the Government and its witnesses from speaking naturally about their responsibilities within the investigation and actions taken throughout the investigation."[37] Instead of a wholesale prohibition of the phrase and its acronym, the Government sets forth that the more appropriate course of action is to allow objections on their use at trial and for consideration of a curative instruction.[38]

After a thorough search, "[t]his Court is unaware of any case law from this circuit or elsewhere that finds 'CSAM' or 'child sex abuse material' to be an inaccurate or inappropriate description of the type of visual material referenced in

---

34 *Id.* at 3.
35 *Id.* at 4.
36 *Id.* at 1, 4.
37 Doc. 121, at 4.
38 *Id.*

18 U.S.C. § 2252."[39] Quite the opposite, courts in this and other circuits often "use these terms s a shorthand for such prohibited material."[40] Further, the United States Court of Appeals for the Third Circuit "has suggested in dictum that these terms are an appropriate description."[41] Therefore, "the Court sees nothing inherently unfair or inaccurate in using the terms 'CSAM' or 'child sex abuse material' when referring to the [content] at issue in this case."[42]

This conclusion is supported by the fact that Mims' arguments regarding assumption or confusion by the jury do not hold up to scrutiny.[43] The jury will be

---

39 *United States v. Bennett*, No. 1:21-CR-16, 2026 WL 452931, at *2 (W.D. Pa. Feb. 18, 2026). The production of child pornography and sexual exploitation of minors counts of the superseding indictment under 18 U.S.C. §§ 2251-52 are the only charges where this term may be relevant, as they both include references to "visual depictions." *See* Doc. 43.

40 *Bennett*, 2026 WL 452931, at *2 (collecting cases).

41 *Id.* at *3 (citing *United States v. Long*, 92 F.4th 481, 483 n.1 (3d Cir. 2024) (court referring to defendant's alleged possession of "child pornography" in violation of 18 U.S.C. § 2252(a)(4)(B) and 2252(b)(2) but noting in dictum that "'child sex abuse material' or CSAM is a more accurate label than 'child pornography,' because the material inherently documents child exploitation and sexual abuse")).

42 *Id.*

43 Mims' argument that the terms are inflammatory is also misplaced. He argues that "for the ordinary juror, inflammatory words of 'child' and 'sex abuse,' comprising 'CSAM,' will conjure horrific images of unimaginable treatment of very young children." Doc. 113, at 6. But the nature of the charges and the subject matter at their root are the inflammatory matter in this case. *See United States v. DeWald, No*. 4:17-CR-00025, 2019 WL 5310297 (M.D. Pa. Oct. 21, 2019) (explaining that charges of sexual misconduct "are by their nature highly inflammatory and prejudicial"). These materials are at issue in this trial, and, therefore, must be described in some way. In this context, the CSAM moniker is no more inflammatory than any other name that could be used. Given that the terms are accurate descriptions and the context of this trial, the Court does not think that the terms are unfairly inflammatory.

Further, the description is not even particularly inflammatory, given that the jury is likely to see the videos and images that the term is used to describe. It seems to the Court the potentially inflammatory material at issue in this case is instead the videos or images themselves. Therefore, despite the curious fact that this material, itself, has not been challenged in a motion in limine or seemingly discussed in any fashion by the parties, the Court will be issuing a subsequent Order that requires them to confer and report back to the Court the quantity and

instructed that the Government carries the burden to establish each and every element of the charged offenses. Those elements will then be described and explained before the jury deliberates. Further, the role of attorneys will also be delved into in the jury instructions. It is well-settled that "[a] jury is presumed to follow its instructions."[44] The Court will not presume that the jury will be easily confused by the use of these terms when they do not inherently shift any burden and are followed in the course of the trial by comprehensive jury instructions. As a result, the jury instructions regarding where the burden lies, the role of the attorneys, and the elements of the offenses, will ameliorate any concerns about confusion assumption.[45]

With regard to Mims' arguments that these terms should be excluded under Rule 403, the Court will decline to do so. The United States Court of Appeals for the Third Circuit has explicitly stated that "*pretrial* Rule 403 exclusions should rarely be granted."[46] "Excluding evidence as being more prejudicial than probative at the pretrial stage is an extreme measure that is rarely necessary, because no harm is done by admitting it at that stage."[47] The Court agrees with this logic. This is not a case where the Court has before it "a record complete enough on the point at issue to be

---

length of the material that will be shown at trial and whether the Defendant will have any objections to the admission and display of that material.

44 *Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

45 These instructions will also properly inform the jury that they are the ultimate trier of facts in this case, no matter what terms or statements were stated by the parties during the trial.

46 *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 859 (3d Cir. 1990).

47 *Id.*

considered a virtual surrogate for a trial record."[48] That is the sole requirement "to exclude evidence under Rule 403 at the pretrial stage," and it is clear that it is not met in this case. As a result, the objection to this evidence under Rule 403 is premature. However, the Defendant may object to a particular use of the terms at trial if he believes it has become unduly prejudicial in the context of the trial, and the Court will rule on its admissibility at that time.

For these reasons, Defendant's Motion to Preclude the Use of the Terms "Child Sexual Abuse Material" or "CSAM" is denied. However, "the Court will encourage the Government to avoid any unnecessary complications in this regard by referring to, *e.g.*, the 'images[/videos] in question,' or by utilizing, when possible, more neutral terms such as 'sexual exploitation material,' depictions of 'sexually explicit conduct,' or comparable language."[49] Additionally, at the appropriate time, both parties are welcome to include within their proposed jury instructions an insert intended to cure any potential prejudice that they believe will arise from this issue.

## IV. PRECLUSION OF THE WORD "VICTIM" AT TRIAL

The second motion in limine filed by Mims asks the Court "to preclude the Government and to instruct its witnesses, to refrain from referring to the complainant and/or any witness as a 'victim.'"[50] He argues that the use of this term would violate

---

48 *Id.*

49 *Bennett*, 2026 WL 452931, at *3.

50 Doc. 114, at 1.

Federal Rule of Evidence 403 and lacks any relevance to the case.[51] Further, he argues that the term is inappropriate because there are no present victims due to the lack of a conviction and that it "tacitly advise[s] the jury that a crime was committed or that the complainant has been injured."[52] This, he proffers, would violate the "right to a fair trial and the presumption of innocence" found in the Due Process Clause of the Fifth Amendment.[53] The Government responds that it and its witnesses will be hamstrung if it cannot use the word, as it is "a natural term used by both lay people and law enforcement."[54]

As the Government has correctly pointed out, this motion raises an issue that has rarely been addressed by district courts within this circuit. The Court can find no binding authority saying that the use of this term is expressly prohibited during a criminal trial, and, in fact, it is common for courts of appeals to find no issue with the use of this term at trial.[55] Both of these facts counsel against wholesale preclusion

---

51 *Id.* at 4.

52 *Id.* at 3.

53 *See* Doc. 115, at 3. The Court cannot find any support for the Defendant's argument that using this term implicitly comments on a witness's credibility. Without any support provided by the Defendant, this Court is not convinced that this argument should sway my analysis in any fashion. But as a fundamental matter, the Court disagrees with the argument. A prosecutor's job is to show the jury that certain witness are telling the truth or not telling the truth, so even if the use of "victim" did this, the Court would find no prejudice or fault. Additionally, it is arguable whether the term actually implies that this person is more trustworthy, as the Defendant alleges. A long line of literature surrounding victim eyewitness identification stands in opposition to this. Regardless of the moniker given to the person, it is what they say on the stand that will affect the jury's analysis of their credibility.

54 Doc. 123, at 3-4.

55 *See, e.g.*, *United States v. Loya*, 720 F. App'x 707, 708 (5th Cir. 2018), *United States v. Granbois*, 119 F. App'x 35, 38 (9th Cir. 2004).

of the title. Additionally, the Court is convinced by the line of out of circuit cases that have found the term "victim" not inherently prejudicial, and that it "is a term commonly used in the English language that does not by its nature connote guilt."[56]

As a final matter, the Defendant's chief argument that the use of the word "remov[es] the fact-finding job from the jury" is not logical.[57] Even assuming that the word "victim" implies that some wrong or crime has been committed, it does not presume that this victim was injured by this specific wrong/crime or this defendant committed that wrong/crime. The Government would still have to prove those elements in order to obtain a conviction. Saying "victim" a smattering of times would not suffice. This Court retains trust in the power and intellect of the jury. Provided the proper jury instructions are given on burden, evidence, the role of attorneys, and requirements of the offenses,[58] the jury will be fully capable of understanding all that it must determine to find a defendant guilty of the charged offenses.[59]

---

56 *United States v. Lussier*, No. 18-CR-281, 2019 WL 2489906, at *5 (D. Minn. June 15, 2019); *see, e.g.*, *United State v. Washburn*, 444 F.3d 1007, 1013 (8th Cir. 2006) ("the term 'victim' in jury instructions is not prejudicial to a defendant's rights"); *Server v. Mizell,* 902 F.2d 611, 615 (7th Cir. 1990); *United States v. Granbois,* 119 F.App'x. 35, 38–39 (9th Cir. 2004) (unpublished mem. decision), *cert. denied,* 543 U.S. 1014 (2004); *United States v. Henery*, No. 14-00088, 2015 WL 409684, at *5 (D. Idaho Jan. 29, 2015) ("Referring to Lewis as the victim of the alleged crime is not prejudicial. The jury will understand, and will in fact be instructed, that this is a criminal case brought by the Government, but that the indictment and the charges are only an accusation").

57 Doc. 115, at 6.

58 All of which are encompassed in the normal jury instructions in this Court.

59 *State v. Rodriguez*, 946 A.2d 294, 307-08 (Conn. App. Ct. 2008) ("Jurors understand the respective roles of the prosecutor and defense counsel. It should not be assumed that jurors will be unduly influenced by the prosecutor's use of the word victim").

Therefore, the Motion in Limine to preclude the use of the word "victim" is denied. However, as with the use of the other phrases discussed above, the Defendant may object to a particular use of the term at trial if he believes it has become unduly prejudicial in the context of the trial, and the Court will rule on its admissibility at that time. Additionally, both parties may include within their proposed jury instructions an insert intended to cure any potential prejudice that they believe will arise from this issue.

## V. PRECLUSION OF EXPERT TESTIMONY

Mims filed a final motion in limine related to expert testimony on August 31, 2026.[60] This motion arose because of the Government's notice of their intent to call Jason Palek, an FBI Forensic Examiner, as a witness at trial.[61] The notice was intended to satisfy the requirement of Federal Rule of Criminal Procedure 16(a)(1)(G) and stated that "Mr. Palek is expected to testify regarding his imaging, duplication, preservation, data extraction, and examination of one or more devices seized in connection with the investigation of this case."[62] It also said that the Government only anticipated calling Mr. Palek as a lay witness and only provided the notice of expert testimony in an abundance of caution.[63]

---

60 *See* Doc. 116.
61 *See* Doc. 109.
62 *Id.* at 1-2.
63 *Id.* at 2.

The Defendant then filed this motion to preclude the expert testimony.[64] He argues that the notice is not sufficient to comply with Rule 16(a)(1)(G) because it does not provide a complete statement of all opinions sought to be elicited.[65] He also includes a secondary argument that he is not qualified to testify as such an expert at "identifying material as depicting minors engaging in sexually explicit conduct and/or constituting child pornography generally."[66]

Because of this latter argument, the Court scheduled a *Daubert* hearing on this motion for September 28, 2026.[67] However, on September 23, 2026, the Government filled a motion to cancel the *Daubert* hearing, indicating that both parties believe that this hearing was unnecessary.[68] As a result of this motion, the Court scheduled a telephonic status conference to discuss both the motion to cancel the *Daubert* hearing and the substantive motion itself.[69] At the conference, the parties agreed that a hearing was unnecessary and they both indicated that they could likely come up with a stipulation regarding Mr. Palek's testimony. As a result, the Court entered an Order canceling the *Daubert* hearing and requiring the parties to submit a joint letter or stipulation "stating whether the parties would still like the Court to rule on the Defendant's Motion to Preclude Expert Testimony."[70]

---

64 Doc. 116.
65 *Id.* at 3.
66 *Id.* at 4.
67 Doc. 124.
68 *See* Doc. 125.
69 *See* Doc. 126.
70 Doc. 128.

On September 29, 2026, a signed stipulation was filed by Mims.[71] The stipulation began by stating that the parties agreed that the, already-canceled,[72] *Daubert* hearing was unnecessary.[73] It then read in pertinent parts: "The parties agree, if called as a witness, FBI Senior Digital Forensic Examiner Jason Palek, would provide limited testimony restricted to his process of conducting extractions on digital devices, including a phone extraction of one Apple iPhone . . . . Beyond Examiner Palek's testimony of his cursory review of the extraction, his testimony will not include anything concerning analysis or identification of the extracted materials. Rather, Examiner Palek will testify that he turned the extraction over to the FBI case agent for further analysis and investigation."[74] Despite the Court's explicit Order not one week earlier,[75] the stipulation inexplicably includes no mention of the Defendant's Motion to Preclude Expert Testimony or the parties' stances on whether the motion should still be decided.[76]

Nevertheless, this stipulation moots the pending motion in limine to preclude expert testimony. Both of the two arguments advanced in that motion were sufficiently addressed by the stipulation. Initially, the stipulation provides a written summary of the testimony that will be sought of this witness by the Government, as

71 Doc 129.
72 *See* Doc. 128.
73 Doc 129.
74 *Id.*
75 *See* Doc. 128.
76 *See* Doc. 129. Counsel is expected to review all opinions and orders submitted by this Court and act in accordance with them.

is required by Rule 16(a)(1)(G). It seems unlikely that the Defendant would argue that the summary he submitted in the stipulation is not a sufficient summary to meet the requirements of the federal rules.

Additionally, the stipulation states that "Examiner Palek's testimony of his cursory review of the extraction, … will not include anything concerning analysis or identification of the extracted materials."[77] This would appear to also remove any doubt that this witness will not testify as an expert in "identifying material as depicting minors engaging in sexually explicit conduct and/or constituting child pornography generally."[78] As the Defendant's *Daubert* qualification concerns were solely concerned with this subject, this argument also appears to be moot.[79]

Therefore, the Court will deny as moot the Defendant's pending motion in limine to preclude expert testimony.

---

77 *Id.*

78 *Id.* at 4.

79 As a final note related to this motion, the Government requested in its brief in opposition for the Court to "make a pre-trial ruling concerning the admissibility of [Mr.] Palek's testimony as a lay witness." *See* Doc. 122, at 6, 10. The Court will decline to make such a ruling for two reasons. First, the Government's concerns regarding the testimony of this witness have likely been ameliorated by the recent stipulation. *See* Doc. 129. Second, it would set a bad precedent if the Court were to consider this request when it was not raised in a motion and was only raised in briefing. Motions practice exists for a reason. Allowing for the consideration of requests that do not come in a motion, and, in fact, come in a single sentence on the sixth page of a brief in opposition that the opposing party did not reply to, would incentivize further requests to be brought outside of the formalized motions process. The Court will not incentivize this practice.

## VI. CONCLUSION

For the foregoing reasons, all four of the pending motions in limine are denied. Additionally, the Government will be required to file a motion to amend the indictment within seven days. Once that motion is filed, the Defendant may file an objection to the motion within seven days.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge